```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     |
DWAN TORRES,                         |
                                     |
            Petitioner,              |
                                     |      05 Civ. 3970 (KMW)(KNF)
    -against-                        |      OPINION AND ORDER
                                     |
WILLIAM MAZZUCA, Superintendent,     |
    Fishkill Correctional            |
    Facility,                        |
                                     |
            Respondent.              |
                                     |
-------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

Petitioner Dwan Torres ("Petitioner") brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Petitioner challenges his 1998 conviction in New York State Supreme Court, New York County, for rape in the first degree, rape in the second degree, and endangering the welfare of a child.

Petitioner asserts nine claims. He argues that: (1) the prosecution's medical expert witness usurped the jury's function (the "Medical Expert Witness Claim"); (2) the prosecutor misused Petitioner's false exculpatory statements (the "Misuse of Statements Claim"); (3) the trial court failed to instruct the jury that the false exculpatory statements could be considered only as evidence of consciousness of guilt (the "Consciousness of Guilt Charge Claim"); (4) testimony about the complainant's pregnancy and abortion, and the admission of fetal evidence were prejudicial (the "Prejudice Claim"); (5) trial counsel rendered

ineffective assistance due to his failure to object to the bases of Claims 1-4 (the "Ineffective Assistance I Claim"); (6) the sentence imposed is excessive (the "Excessive Sentence Claim"); (7) the trial court improperly allowed a law enforcement official to communicate his opinion that rapists typically do not admit to the use of force (the "Detective's Testimony Claim");[1] (8) trial counsel rendered ineffective assistance due to his failure to object to evidence concerning uncharged crimes (the "Ineffective Assistance II Claim"); and (9) trial counsel rendered ineffective assistance due to his failure to request a missing witness charge (the "Ineffective Assistance III Claim").[2]

The Court referred this matter to Magistrate Judge Kevin Nathaniel Fox. On December 13, 2007, Magistrate Judge Fox issued a Report and Recommendation (the "Report"), familiarity with which is assumed, recommending that the Court deny the Petition.

---

[1] Petitioner relies on the Table of Contents of his appellate brief submitted to the New York State Appellate Division, First Department, to state the grounds on which he now seeks habeas relief. (Pet. ¶ 13, D.E. 1.) Because Petitioner proceeds pro se, the Court liberally construes these grounds to assert the strongest possible arguments. Cf. Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (complaints filed by pro se litigants shall be construed to "raise the strongest arguments that they suggest"). The Court thus construes Petitioner's appellate brief to raise Claims 1-7.

[2] Petitioner raises Claims 8-9 in his objections. The Court notes that the Ineffective Assistance II Claim and the Ineffective Assistance III Claim were not raised in the appellate brief or the Petition.

(D.E. 11.) Petitioner filed timely objections to the Report.[3] For the reasons stated below, the Court considers the Petition <u>de novo</u> and DENIES the writ of habeas corpus.

I. **BACKGROUND**[4]

By judgment entered June 2, 1998, Petitioner was convicted, after a jury trial, of (1) Rape in the First Degree, (2) Rape in the Second Degree, and (3) Endangering the Welfare of a Child. The trial court sentenced Petitioner to concurrent terms of (1) twelve and one-half to twenty-five years for his first-degree rape conviction, (2) two and one-third to seven years for his second-degree rape conviction, and (3) one year for his endangering the welfare of a child conviction.

    A. **COLLATERAL REVIEW**

Petitioner timely moved to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. (Resp.'s Decl. Ex. A, D.E. 8.) Petitioner argued that his trial counsel rendered ineffective assistance due to his failure to seek "to preclude the prosecution from introducing evidence of the complainant's pregnancy and abortion," including the

---

[3] In a January 7, 2008 Order, the Court granted Petitioner an extension of time until February 15, 2008 to file any objections to the Report. (D.E. 12.) Petitioner's objections were filed in accordance with this Order. (D.E. 13, 14.)

[4] The Report's "Background" section provides additional information about Petitioner's alleged criminal conduct and the procedural history of his case. The Court adopts this section with the single clarification described <u>infra</u> note 8. (<u>See</u> Report 2-8.)

3

admission of fetal evidence, despite "the concession that [Petitioner] had sex with the complainant."[5]  (Id. ¶ 6.)

On October 15, 2002, the trial court denied Petitioner's CPL § 440.10 motion because (1) it rested on a record-based claim, which could not be raised on collateral review pursuant to CPL § 440.10(2)(b); (2) Petitioner failed to support his claim with an affidavit or other evidence pursuant to CPL § 440.30(4)(d); and (3) "the record as a whole establishes that [trial] counsel's decision not to object to the introduction of fetal evidence or testimony relating to the fact that the victim had an abortion was not a flaw, but rather a viable trial stratagem."  (Resp.'s Decl. Ex. C 2-4.)

**B. CONSOLIDATED APPEAL**

Petitioner timely sought leave to appeal the trial court's CPL § 440.10 ruling, and also timely filed a direct appeal of the June 2, 1998 judgment.  The New York State Appellate Division, First Department (1) granted Petitioner leave to appeal the trial court's CPL § 440.10 ruling, and (2) consolidated this appeal with Petitioner's direct appeal.  (Resp.'s Decl. Ex. F.)  In this

---

[5] On collateral review, the trial court noted that (1) "the fetal remains [] were wrapped so as not to be visible;" and (2) "the evidence [was] relevant to an issue at trial" because it established "the chain of custody relating to the admissibility of the DNA evidence."  (Resp.'s Decl. Ex. C 5-6.)

consolidated appeal, Petitioner raised Claims 1-7.[6]  (See Resp.'s Decl. Ex. G.)

On January 22, 2004, the Appellate Division "unanimously affirmed" the October 15, 2002 ruling on Petitioner's CPL § 440.10 motion and the June 2, 1998 judgment. People v. Torres, 3 A.D.3d 433, 433-34 (N.Y. App. Div. 2004).  The Appellate Division denied the Ineffective Assistance I Claim and the Excessive Sentence Claim on the merits.[7] Id. at 434. The Appellate Division denied Petitioner's other five claims on procedural grounds.[8] Id.

---

[6] The Court details that Petitioner's Ineffective Assistance I Claim is based on trial counsel's (1) "failure to object to [the prosecution's medical expert witness's] testimony that [the complainant] did not consent to the sex" (Resp.'s Decl. Ex. G 48); (2) "fail[ure] to object to the prosecutor's misuse of [Petitioner's] false exculpatory statements" (id. at 49); (3) "fail[ure] to request a charge limiting the jury's consideration of [Petitioner's false exculpatory] statements" (id.); and (4) "silence in the face of testimony about [the complainant's] pregnancy and abortion, and the introduction of the aborted fetus" (id. at 50).

[7] With respect to the Ineffective Assistance I Claim, the Appellate Division found that "[t]he record establishes that [Petitioner] received effective assistance. Trial counsel's failure to make various objections did not deprive [Petitioner] of a fair trial or prejudice his defense." Torres, 3 A.D.3d at 434 (citations omitted). With respect to the Excessive Sentence Claim, the Appellate Division "perceive[d] no basis for reducing the sentence." Id.

[8] The Appellate Division held that these five claims were "unpreserved" and "decline[d] to review them in the interest of justice." Torres, 3 A.D.3d at 434.
    The Appellate Division ruled in the alternative on the merits of each of the five claims denied on procedural grounds. With respect to the Medical Expert Witness Claim, the Appellate Division stated that "[w]ere we to review this claim, we would find that [Petitioner's] cross-examination of the expert opened the door for questioning on redirect examination as to whether the medical findings were consistent with consensual sex. In any event, the expert's answer did

5

On February 9, 2004, Petitioner applied for leave to appeal to the New York State Court of Appeals. (Resp.'s Decl. Ex. J.) On April 9, 2004, the Court of Appeals denied Petitioner's application. People v. Torres, 811 N.E.2d 46 (N.Y. 2004).

## II. DISCUSSION

Although the Report thoroughly analyzed the substantive merits of Claims 1-7, it did not consider (1) the implications of the Appellate Division's holding that Claims 1-4 were procedurally barred; (2) the required deference to state court adjudications; (3) the Detective's Testimony Claim as a separate claim; and (4) the Ineffective Assistance II Claim and the Ineffective Assistance III Claim raised in Petitioner's objections. The Court thus reviews the Petition de novo.

### A. STANDARD OF REVIEW OF A HABEAS PETITION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal court may hear a petition for habeas corpus "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

---

not usurp the jury's function." Torres, 3 A.D.3d at 434 (citations omitted). Similarly, the Appellate Division held that were it to review the remaining claims on the merits, "we would reject them." Id.

The Report determined that the Appellate Division denied the Medical Expert Witness Claim on the merits. (See Report 8.) The Court clarifies that the Appellate Division denied this claim on procedural grounds, and stated an alternative ruling on the merits.

### 1. The Exhaustion Requirement

It is well settled that applicants seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must first exhaust all remedies available in state court. Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001). Exhaustion requires a petitioner to "present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991).

However, an unexhausted claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). "The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits." Toland v. Walsh, No. 02 Civ. 0399, 2008 WL 820184, at *15 (N.D.N.Y. Mar. 26, 2008). "[S]everal district judges in this Circuit have expressed the test as whether the unexhausted claim is 'patently frivolous.'" Hernandez v. Lord, No. 00 Civ. 2306, 2000 WL 1010975, at *4 (S.D.N.Y. July 21, 2000) (collecting cases). "Other courts . . . express the test as whether it is perfectly clear that the [petitioner] does not raise even a colorable federal claim, in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." Id. at *4 n.8 (internal quotation marks and citation omitted) (collecting cases).

**        2.   Procedural Default**

Procedural default occurs "when a state court decline[s] to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  However, a state procedural bar "will be deemed adequate only if it is based on a [procedural requirement] that is firmly established and regularly followed by the state in question." Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) (internal quotation marks and citations omitted).

Procedural default generally precludes federal habeas relief.  See Jones v. Vacco, 126 F.3d 408, 414 (2d Cir. 1997). However, a petitioner may overcome procedural default by demonstrating (1) "cause for the default and prejudice," or (2) "that failure to consider the claims will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio, 269 F.3d at 90.  "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule.'" Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  To establish "actual prejudice," a petitioner must establish "a reasonable probability" that, but for the violation of federal law, the outcome of the case would have been different. Mathis

8

v. Hood, 937 F.2d 790, 794 (2d Cir. 1991). A "fundamental miscarriage of justice" occurs only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993) (internal quotation marks and citation omitted).

### 3. Deference to State Court Adjudications

Under AEDPA, a federal court may not grant a 28 U.S.C. § 2254 habeas petition on any claim adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[9] "[T]o invoke the deferential standards of AEDPA, the state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." Aparicio, 269 F.3d at 93-94.

The "contrary to" clause of 28 U.S.C. § 2254(d)(1) is satisfied when "(1) the state court applies a rule that

---

[9] The Court notes that even liberally construing Petitioner's claims, Petitioner does not raise a challenge under 28 U.S.C. § 2254(d)(2).

9

contradicts the governing law set forth in the relevant Supreme Court precedents, or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court] precedent." Brooks v. Artuz, No. 97 Civ. 3300, 2000 U.S. Dist. LEXIS 15070, at *8 (S.D.N.Y. Oct. 17, 2000) (internal quotation marks and citation omitted).

"Under the 'unreasonable application' clause of 28 U.S.C. § 2254(d)(1), 'a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Cotto, 331 F.3d at 247 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). The Supreme Court has clarified that "an unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Williams, 529 U.S. at 412 (emphasis in original). A federal court thus cannot grant habeas relief because, "in its independent judgment, it would have decided the federal law question differently." Aparicio, 269 F.3d at 94.

**B. CLAIMS 1-4**

After de novo review, the Court denies the following four claims for procedural default: the Medical Expert Witness Claim, the Misuse of Statements Claim, the Consciousness of Guilt Charge Claim, and the Prejudice Claim.

10

The Court finds that the Appellate Division previously declined to address Claims 1-4 due to Petitioner's failure to meet state procedural requirements. See supra note 8. The Appellate Division found Claims 1-4 "unpreserved" and therefore declined to review them.[10] Torres, 3 A.D.3d at 434. The Court of Appeals denied Petitioner's application for leave to appeal without elaboration.[11] People v. Torres, 811 N.E.2d 46 (N.Y. 2004).

The Appellate Division's rulings on these four claims rested on an adequate state procedural bar: Petitioner's failure to comply with New York's preservation rule. See Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (citing CPL § 470.05(2)) (the New York preservation rule "requires a contemporaneous objection to any alleged legal error by defense counsel at a criminal trial"). The preservation rule is "firmly established" and "regularly followed." Richardson, 497 F.3d at 220; see also Dozier v. McGinnis, No. 05 Civ. 3678, 2008 U.S. Dist. LEXIS 24538, at *18-21 (E.D.N.Y. Mar. 26, 2008); Minigan v. Donnelly,

---

[10] Although the Appellate Division ruled in the alternative on the merits of Claims 1-4, the Appellate Division expressly relied on Petitioner's failure to satisfy a state procedural requirement as a separate basis for its decision. Accordingly, the Court concludes that Claims 1-4 are procedurally defaulted. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[11] The Court of Appeals "did not silently disregard [the procedural default] and consider the merits" of Claims 1-4. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Accordingly, "the last reasoned opinion on [Claims 1-4] explicitly imposes a procedural default." Id.

11

No. 01 Civ. 0026A, 2007 U.S. Dist. LEXIS 64446, at *24-27 (W.D.N.Y. Feb. 16, 2007). Accordingly, Claims 1-4 are procedurally defaulted.

Petitioner fails to overcome these procedural defaults. Petitioner's arguments, liberally construed, state that his failures to comply with New York's preservation rule were due to ineffective assistance of trial counsel. "[C]ounsel's ineffectiveness in failing properly to preserve the claim[s] for review in state court" may establish cause. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Carrier, 477 U.S. at 488-89). However, the Supreme Court cautions that in order to establish cause, counsel's "assistance must have been so ineffective as to violate the Federal Constitution." Id. As the Court discusses infra, Petitioner's Ineffective Assistance I Claim is without merit. Accordingly, Petitioner cannot establish cause and therefore cannot overcome the procedural defaults.[12]

Accordingly, the Court denies the Medical Expert Witness Claim, the Misuse of Statements Claim, the Consciousness of Guilt Charge Claim, and the Prejudice Claim for procedural default.

**C. CLAIMS 5-6**

As stated above, the Appellate Division denied the

---

[12] Petitioner presents no evidence of his innocence to show that failure to consider Claims 1-4 will result in a "fundamental miscarriage of justice." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (requiring a showing that a petitioner "is actually innocent of the crime for which he has been convicted").

Ineffective Assistance I Claim and the Excessive Sentence Claim on the merits. See supra note 7. Such an adjudication triggers review under the deferential standard codified in 28 U.S.C. § 2254(d).[13]  See Aparicio, 269 F.3d at 93-94.

After de novo review, the Court adopts the Report's analysis that the Ineffective Assistance I Claim and the Excessive Sentence Claim are without merit.  (See Report 21-24.)  The Court therefore concludes that the Appellate Division's rulings on Claims 5-6 were neither "contrary to," nor "an unreasonable application of," "clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1).

Accordingly, the Court denies the Ineffective Assistance I Claim and the Excessive Sentence Claim.

**D.   CLAIM 7**

Petitioner argued in the consolidated appeal that the trial court, over defense counsel's objection, allowed Detective Tacchi to communicate his opinion that "rapists in [Petitioner's] situation typically do not admit" to the use of force.  (Resp.'s Decl. Ex. G 36.)  The Appellate Division concluded that this challenge was unpreserved.  Torres, 3 A.D.3d at 434.  However, Respondent concedes that Petitioner raised a contemporaneous

---

[13] The Court notes that it would reach the same conclusion after a de novo review on the merits of the Ineffective Assistance I Claim.

objection to the testimony of Detective Tacchi and therefore, Respondent "does not contend that this claim is barred from habeas review." (Resp.'s Mem. 14 n.7, D.E. 8.)

The Report analyzed the Detective's Testimony Claim in the context of the Misuse of Statements Claim. (See Report 16-17.) However, given the Appellate Division's failure to consider the contemporaneous objection to Detective Tacchi's testimony, the Court construes the Detective's Testimony Claim as a separate claim. After de novo review on the merits, the Court concludes that the Detective's Testimony Claim is without merit. The Court adopts the Report's analysis of the substantive merits of Claim 7.[14] (Id.) Accordingly, the Court denies the Detective's Testimony Claim on the merits.

### E. CLAIMS 8-9

Petitioner raises two new claims in his objections to the

---

[14] Petitioner argues that Detective Tacchi improperly communicated his opinion that "rapists in [Petitioner's] situation typically do not admit" to the use of force. (Resp.'s Decl. Ex. G 36.) The Report concluded that Detective Tacchi testified regarding his belief that Petitioner "was not capable of admitting to using force," but "did not opine on the conduct 'typical of rapists.'" (Report 16-17.) The Court agrees that (1) Detective Tacchi properly testified regarding his individualized assessment of Petitioner, and (2) Detective Tacchi did not testify regarding the behavior typical of rapists. The Court supplements the Report's analysis with the following excerpts from the trial transcript: On redirect examination, the prosecutor asked Detective Tacchi if it was "ever [his] objective at any time during the interview to get [Petitioner] to admit to force?" (Trial Tr. 173, D.E. 8.) Detective Tacchi answered: "I didn't think from the outset that I was going to be able to obtain that so I wanted to ascertain specifics with regards to that there had been sexual relations. I didn't think he was capable of admitting to the force." (Id.)

Report: the Ineffective Assistance II Claim and the Ineffective Assistance III Claim. Unlike Claims 1-7, which were raised in Petitioner's appellate brief and therefore exhausted in state court, Claims 8-9 are unexhausted. However, in its discretion, the Court reviews de novo these unexhausted claims. Pursuant to 28 U.S.C. § 2254(b)(2), the Court denies these claims on the merits because they are patently frivolous and fail to state a colorable federal claim.

### 1. The Ineffective Assistance II Claim

Petitioner argues that his trial "[c]ounsel failed to object to argument or testimony concerning uncharged crimes," and "that failure, together with counsel's subsequent failure to request a limiting instruction regarding the jury's consideration of the uncharged crimes evidence constituted ineffective representation." (Pet.'s Objections 2.)

However, a review of the record reveals no argument or testimony regarding uncharged crimes. The Court therefore finds that Petitioner's argument is patently frivolous and does not raise a colorable federal claim. Accordingly, the Court denies the Ineffective Assistance II Claim on the merits.

### 2. The Ineffective Assistance III Claim

Petitioner argues that his trial counsel's failure to request a missing witness charge regarding "Jay [Mustafa J. Shabazz]" constituted ineffective assistance of counsel. (Pet.'s

15

Objections 6-7.)

"The 'missing witness' instruction allows a jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support the party's version of events." People v. Savinon, 791 N.E.2d 401, 403 (N.Y. 2003). Under New York case law:

> When the uncalled witness can be said to be equally available to both parties – that is, when it is within the ability of both parties to produce the witness – but the witness is a stranger to both parties and thus cannot be expected to testify favorably to one party or the other, then generally no unfavorable inference may be drawn from the failure of either party to call the witness. On the other hand, if a witness, although theoretically "available" to both sides, is favorable to or under the influence of one party and hostile to the other, the witness is said to be in the "control" of the party to whom he is favorably disposed, and an unfavorable inference may be drawn from [the controlling party's] failure to call the witness.

People v. Gonzalez, 502 N.E.2d 583, 587 (N.Y. 1986) (citations omitted). A missing witness charge is thus appropriate under New York law where there exists "such a relationship, in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor." Id.

A missing witness charge in favor of Petitioner was not appropriate. First, the record indicates that the witness was "available" to both the prosecution and Petitioner. During voir dire, Petitioner's trial counsel stated that a missing witness situation may arise "depend[ing] on who the Prosecution calls. I mean, there is one witness that I anticipate that they'll call.

16

If they don't call him, I'll ask for a missing witness charge. He was in the apartment." (Voir Dire Tr. 137.) Petitioner asserts that his trial counsel was referring to "Jay." (Pet.'s Objections 6.) When the prosecution raised the issue of a missing witness charge at sidebar during the trial, defense counsel stated: "I'm going to call Jay." (Trial Tr. 183.) Defense counsel thus indicated that the witness was "available" to both the prosecution and Petitioner.

Second, Petitioner was the controlling party because the witness would be expected to testify favorably to Petitioner. Under both the prosecution's and Petitioner's version of the alleged crime, Petitioner engaged in sexual intercourse with the complainant in Jay's apartment while Jay was at home. "The closeness of th[e] relationship" between Petitioner and Jay leads to the expectation that Jay would have testified favorably to Petitioner. Savinon, 791 N.E.2d at 407 (finding that the trial court did not abuse its discretion in giving a missing witness instruction in favor of the prosecution where "under either side's version of the alleged crime, defendant was so bonded with [the missing witness] as to have had sex with the complainant with [the missing witness] nearby"). Based on Petitioner's "control" of the witness, a missing witness charge in favor of Petitioner was not appropriate. Savinon, 791 N.E.2d at 407.

Trial counsel's failure to request a missing witness charge therefore does not demonstrate performance below an "objective

17

standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Accordingly, the Court finds that Petitioner's argument is patently frivolous and does not raise a colorable federal claim. The Court thus denies the Ineffective Assistance III Claim on the merits.

### III. **CONCLUSION**

For the reasons set forth above, the Petition is denied. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); cf. United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.

Dated: New York, New York
June _16_, 2008

_____
Kimba M. Wood
United States District Judge